# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2696-17T4

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

C.C.,

     Defendant-Appellant,

and

L.C.,

     Defendant.

_____

IN THE MATTER OF K.C.,
C.C., JR., and S.C.,

     Minors.

_____

Submitted December 5, 2018 - Decided May 14, 2019

Before Judges Fuentes and Accurso.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FN-07-0473-16.

Joseph E. Krakora, Public Defender, attorney for appellant (David A. Gies, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jason W. Rockwell, Assistant Attorney General, of counsel; Mary L. Harpster, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (David B. Valentin, Assistant Deputy Public Defender, on the brief).

PER CURIAM

Defendant C.C. appeals from a January 19, 2017 fact-finding order, made appealable by a subsequent order terminating the Title Nine proceeding, that he sexually abused his daughter Nicole and inflicted excessive corporal punishment on her twin brother Tom,[1] arguing the Division failed to corroborate their allegations as required by N.J.S.A. 9:6-8.46(a)(4). Because we agree with the Division of Child Protection and Permanency, as well as the Law Guardian, that there is substantial credible evidence in the record to support Judge Forrest's

---

[1] These are fictitious names we use to guard the children's privacy.

A-2696-174

finding that the Division carried its burden under both N.J.S.A. 9:6-8.21(c)(3) and -8.21(c)(4)(b), we affirm.

The Division brought this action after fourteen-year-old Nicole told her mother, L.C., that her father had started touching her sexually when she was nine,[2] and had been engaging in vaginal intercourse with her since she was about twelve. L.C. testified through an interpreter at the fact-finding hearing that Nicole was sitting right next to her shivering and shaking when she made these revelations. L.C. was shocked and asked Nicole if she were sure about what she was saying. L.C. testified she believed Nicole was telling the truth based on how she looked when she confided in her, and, as she later learned, that Nicole had been cutting herself.

L.C. confronted her husband the same day Nicole spoke to her. She testified she was not "feeling so well" at the time and could not remember everything she said to him, but acknowledged the conversation got loud. She claimed she was asking him if it was true and he was crying and "denying everything," but that she kept on asking. The court sustained defense counsel's

---

[2] The family was from the Dominican Republic. The children lived with their mother there for several years after their father emigrated to the United States. They joined him here when the twins were nine.

A-2696-174

objection to L.C. testifying further about what defendant said based on the marital privilege.[3]

L.C. took Nicole to the hospital the next morning and reported her allegations to the Division and the police. Both the case worker for the Division and a police officer who interpreted for L.C. in her dealings with the police testified she told them that when she confronted her husband, he went to his knees and apologized, promising to be a better person and asking for another chance. The case worker further noted that Tom told him he overheard parts of the conversation between his parents. He heard his mother confronting his father, and his father saying, "Sorry, give me another chance. I will do anything." He also heard his mother say, "This was your child. How could you?" and his father reply, "It was a mistake."

---

[3] As noted by the trial judge, there are two forms of marital privilege. The privilege invoked here, N.J.R.E. 509, "protects communications between spouses unless the communication occurs when they are 'living separate and apart under a divorce from bed and board.'" State v. Mauti, 416 N.J. Super. 178, 193 (App. Div. 2010), aff'd. 208 N.J. 519 (2012). The testimonial privilege in N.J.R.E. 501(2) applies only in criminal proceedings and restricts "the State from compelling the spouse to testify against the accused." Id. at 192. As the Court noted in State v. Szemple, 135 N.J. 406, 415 (1994), "the privilege does not protect against the testimony of third persons who have overheard (either accidentally or by eavesdropping) an oral communication between husband and wife." (quoting 1 McCormick on Evidence § 82 (Strong ed., 4th ed. 1992) (footnotes omitted)); see also Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, cmt. on N.J.R.E. 509 (2019).

A-2696-174

When the worker asked Tom whether he was aware that his father was inappropriately touching his twin, Tom said Nicole never told him, but he suspected. He revealed he saw his sister and their father naked together in his parents' room a few years before. When he asked what was going on, his sister grabbed her clothes and left the room without looking at him. Tom said his father "made like nothing happened." On another occasion the year before Nicole finally told their mother, he heard his sister scream "Don't touch me" from their parents' bedroom. He said his mother was at work on both occasions.

Tom also revealed his father had punched him and whipped him with a belt, showing the case worker healed welts on his back. The medical report admitted in evidence described twelve or thirteen well-healed scars on his back, measuring seven to eight inches each. Both children claimed their father had threatened them, with Nicole reporting he told her he would kill her and her mother if she ever told. Both children told authorities they were afraid of him.

Although Nicole provided the case worker, the emergency room personnel and the police officers who interviewed her the same detailed account she had provided her mother the day before, she recanted those allegations ten days later. When Nicole was interviewed as part of her psychosocial evaluation after her father had been barred from the family home, Nicole told the psychologist her

A-2696-174

statements to her mother were "not the truth" and that "it didn't really happen." In his own evaluation, Tom reported feeling sad and angry at his father. He denied fearing his father. He said he wished his family was back together and that his father did not do "what he did."

Because the prosecutor's office directed the case worker not to interview defendant, the worker did not ask him any questions. Defendant did not testify at the fact-finding hearing.

After hearing the testimony, Judge Forrest put his decision on the record. The judge found all three witnesses credible, finding each answered questions directly and without evasion on both direct and cross examination. Addressing Nicole's recantation, the judge found more powerful L.C.'s impression of her daughter's truthfulness when she first disclosed the abuse. Noting L.C.'s actions in taking Nicole to the hospital and contacting the police and the child welfare authorities "speak that she believed her," the judge found L.C. "acted responsibly in taking appropriate action to care for her children based on her evaluation of the believability of the allegations."

Judge Forrest found Tom's statements of being beaten with a belt corroborated by the linear scars on his back. The judge noted Tom's report of overhearing his mother confronting his father the night Nicole told her of the

abuse and his father saying he was sorry and it was a mistake. He also noted Tom's report of walking in on his father and sister naked in bed and another time hearing Nicole scream at their father not to touch her. The judge found the children's statements and "the physical evidence as noted by the medical professionals is all consistent and corroborative." He further found defendant's "statements scream out of consciousness of guilt, admissions and [are] clearly corroborative of the children's statements." Based on the credibility of the witnesses and his analysis of the evidence, the judge found the Division met its burdens of proving both Nicole and Tom were abused and neglected children as defined in N.J.S.A. 9:6-8.21(c)(3) and -8.21(c)(4)(b).

Defendant appeals, arguing the trial court erred in finding defendant sexually assaulted his daughter because Nicole's allegation was not corroborated by eyewitness testimony, an admission or medical evidence. Specifically, he contends Tom's statement about what he overheard his father say was not consistent with his mother's testimony that defendant had denied everything and he did not hear his father admit to any sexual act. Defendant also argues L.C.'s report of confronting defendant "is not enough to corroborate Nicole's allegation either" as it produced only a denial from defendant. Defendant further contends "Tom's statements are not consistent with Nicole's allegation of abuse" and not

A-2696-174

"sufficient to constitute corroboration." Finally, he argues the hospital records and psychosocial evaluations indicate no physical injury to Nicole, other than the self-inflicted cuts to her arm.

As to Tom, defendant argues the judge's conclusion that defendant used excessive corporal punishment was erroneous because the Division failed to show Tom suffered actual harm and that the manner in which Tom was disciplined was improper. Defendant argues Tom's lack of specificity as to when defendant disciplined him deprived the court of an ability to examine "when or why he disciplined his children." Defendant further argues the Division failed to show actual harm, noting "Tom required no medical treatment or attention at any time."

We find those arguments, which are premised entirely on alleged errors in the judge's fact finding, utterly without merit. The trial court "has the opportunity to make first-hand credibility judgments about the witnesses who appear on the stand; it has a 'feel of the case' that can never be realized by a review of the cold record." N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008) (citation omitted). We are not free to overturn the factual findings and legal conclusions of a trial judge "unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant

A-2696-174

and reasonably credible evidence as to offend the interests of justice." Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974) (citation omitted).

Our review of the trial court's factual findings in this abuse and neglect proceeding is strictly limited to determining whether those findings are supported by adequate, substantial and credible evidence in the record. N.J. Div. of Youth & Family Servs. v. Z.P.R., 351 N.J. Super. 427, 433 (App. Div. 2002). Because the trial judge's findings that defendant sexually abused his daughter Nicole and inflicted excessive corporal punishment on his son Tom have such support in this record, we are bound by them in deciding the appeal. See Rova Farms, 65 N.J. at 484.

We affirm the abuse and neglect finding in this matter substantially for the reasons expressed by Judge Forrest in his thorough and thoughtful opinion of January 19, 2017.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

9                                                                                    A-2696-174